# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FREDERICK BLUNT,<br><br>    Plaintiff,<br><br>v.<br><br>EXELON/COMMONWEALTH EDISON COMPANY,<br><br>    Defendants. | No. 07 C 6753<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

Plaintiff filed a complaint against Defendants, Plaintiff's former employer, alleging that his employment was terminated based on his race and color in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* and Section 1 of the Civil Rights Act of 1866, as modified by the Civil Rights Act of 1991, 42 U.S.C. § 1981. Defendants now move for summary judgment. For the following reasons, Defendants' motion is granted.

### II. PRELIMINARY ISSUES

"Local Rule 56.1(a)(3) requires a movant to submit a statement of undisputed material facts that, according to the movant, entitles that party to judgment as a matter of law." *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000). According to the rule, the statement "shall consist of short numbered paragraphs," each of which specifically refers to affidavits, parts of the record, and other material in support of the facts set forth therein. Local Rule 56.1. Defendant has complied with this requirement.

Local Rule 56.1(b)(3)(B) requires the opposing party to file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Pursuant to Rule 56.1(b)(3)(C), the non-movant should also file its own statement of additional facts that require the denial of summary judgment, including references to supporting material. Just as the movant's statement, the non-movant's statement should consist of short numbered paragraphs.

In this case, Blunt has filed no response to Defendants' 56.1 statement, nor a statement of additional facts pursuant to Rule 56.1(b)(3)(C). According to Rule 56.1(b)(3)(C), "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."

> This rule may be the most important litigation rule outside statutes of limitation because the consequences of failing to satisfy its requirements are so dire. Essentially, the penalty for failing to properly respond to a movant's 56.1(a) statement is usually summary judgment for the movant (at least if the movant has done his or her job correctly) because the movant's factual allegations are deemed admitted.

*Malec*, 191 F.R.D. at 583-584. The Seventh Circuit has consistently upheld strict enforcement of Rule 56.1. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). Because Plaintiff has failed to respond to Defendants' 56.1(a) statement of fact, Defendants' factual allegations are deemed admitted.

### III. STATEMENT OF RELEVANT FACTS

On December 6, 1984, Plaintiff Frederick Blunt began working for Defendant Commonwealth Edison ("ComEd"), a subsidiary of Defendant Exelon, as a cable splicer. As

part of his duties, Plaintiff was required to use machinery to bury electrical lines, to physically splice one kind of cable with another, to find and fix breaks in the cable, and to turn on power after an installation or repair. This job can be a dangerous one, and cable splicers have been seriously injured when cables have exploded. Property damage may also ensue if correct procedures are not followed.

On February 1, 2006, at around 11:00 a.m., Blunt was on the job when he felt something "pull" in his arm. Initially, Blunt was hesitant to report such a minor incident to his superiors. However, by the end of his shift, the pain had not subsided. At that point, he made a report to a supervisor, Grady Duckworth. The next day Blunt reported for work, and another supervisor, Jim Eckhorn, questioned Blunt about whether the pain in his arm might have been caused by a non-work-related incident. When Blunt said that he had heard something "pop" while he was working, Eckhorn told Blunt he would need to be examined by the company doctor. Blunt complied. The doctor informed Blunt that he did not think the injury was serious, and he sent Blunt away with some over-the-counter pain medication, a rubber exercise band and a workout sheet. After the visit, Blunt returned to work.

That evening, a friend visited Blunt at his home. During this visit, Blunt's friend laid out some cocaine, which he had brought with him, and began to snort it. A few times throughout the course of the evening, Blunt ran his finger through the powder and rubbed it on his gums. The next morning, Blunt called into work and said that the pain in his arm was so bad that he would not be able to come in, and that he was going to see his doctor. At 6:26 a.m. Duckworth emailed his superior, John Boyle, notifying him of Blunt's absence. Boyle responded at 6:32 a.m. asking

Duckworth to determine whether Blunt was maintaining the injury to be work related. If so, said Boyle, Blunt would need to see ComEd's doctor immediately.

At 6:46 am, Duckworth reported to Boyle that Blunt said his arm injury "might" be work related and that Blunt had agreed to see the company doctor. According to Duckworth, he called Blunt back at around 7 a.m. and asked him to come to work so that he could be transported from there to a medical clinic used by the company. Blunt responded that he had taken some Vicodin and would not be able to drive in, but that if Duckworth wanted to pick Blunt up at his home, that would be fine. Blunt also mentioned that he had made an appointment with his own doctor. Blunt told Duckworth that he hadn't slept much the previous night, and that he was going to sleep until it was time for his doctor's appointment. He agreed to see the company doctor afterwards. Duckworth told Blunt to call him around 9:00 a.m., when the company doctor would be arriving at the clinic.

A couple of hours later, ComEd management tried to reach Blunt on a company-issued cell phone as well as two personal numbers, but to no avail. A ComEd manager reported to Duckworth that he drove to Blunt's home but that no one answered the door. He left a message for Blunt to call Duckworth.

There is some dispute as to who called whom, but around 1:00 p.m., Blunt spoke with Duckworth, who once again urged Blunt to see the company doctor. Blunt refused to do so until after seeing his own doctor. Duckworth asked Blunt once more if he thought that the pain in his arm was work related. This time Blunt said "no."

ComEd policy dictates that a supervisor must immediately notify a case manager if an employee unexpectedly misses work due to a work-related injury. Pursuant to this policy,

Duckworth contacted the nurse-case manager, Roberta Lehmkuhl, notifying her of Blunt's absence. She evaluated the situation with regard to Blunt's injury - the initial diagnosis, the fact that he had been able to return to work, his inability to report to work the following day, and his reported use of Vicodin (a narcotic) without a prescription from the company doctor. In addition, he appeared not to be home despite the fact that he had called in sick. Finally, this was Blunt's fifth absence in less than two and half months. After consulting with company management, the human resources staff, and the legal department, Lehmkuhl decided that the company clinic should be asked about administrating a fitness-for-duty test. At that time, Lehmkuhl was not aware of Blunt's race.

At 2:33 p.m. Duckworth called Blunt and left a message telling him not to eat, drink, smoke, or take anything by mouth, and that he should call Duckworth back. Blunt did so at 3:40 p.m. on the way home from his doctor's visit. Duckworth told him to continue home and wait there - Duckworth would be coming to pick him up and take him to the clinic. At 7:50 p.m. Blunt gave a urine sample, which tested positive for both cocaine and marijuana. Blunt was suspended from work for three days and was paid to go through a five-week drug program.

ComEd's Drug and Alcohol Policy mandates that employees that test positive for drugs and return to work after treatment are subject to unannounced follow-up testing. Under the policy, a person who tests positive for drugs a second time "will be immediately terminated from employment regardless of the passage of time between the first and second violation." On July 26, 2006, a few months after the first positive test, Blunt again tested positive for cocaine. At that time, a termination request form was completed and approved by senior management. The basis for the termination was the undisputed evidence that Blunt had twice tested positive for

5

drugs, in violation of ComEd's policy. On August 4, 2006, Blunt was sent a letter informing him of his termination, effective immediately.

On November 30, 2007, Blunt filed a pro se complaint[1] against ComEd alleging that his employment was terminated based on his race and color in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* and Section 1 of the Civil Rights Act of 1866, as modified by the Civil Rights Act of 1991, 42 U.S.C. § 1981. At a status hearing on April 2, 2009, I set a briefing schedule for Defendants' motion for summary judgment. Plaintiff was given six weeks to respond to Defendants' motion once it was filed. Defendants filed their motion for summary judgment on April 16, 2009, and served on Blunt a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment," which explains the concept of summary judgment, how to defeat Defendants' motion, and the formal requirements for the response. Blunt has filed nothing.

## IV. STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

---

[1] Given the undisputed facts of this case and considering what Blunt did say in response to the motion, it is no surprise that he is unrepresented. Few, if any, lawyers would take this case (as presented to me) even where the law requires a losing defendant to pay legal fees.

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the non-moving party, and draw all reasonable inferences in the non-movant's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). I will accept the non-moving party's version of any disputed fact only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

**V. DISCUSSION**

"A plaintiff alleging race discrimination under Title VII and § 1981 can prove such discrimination either by providing direct evidence of an employer's discriminatory intent or by showing disparate treatment using indirect evidence and the burden-shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Alexander v. Wis. Dep't of Health & Family Servs.*, 263 F.3d 673, 682 (7th Cir. 2001). Under the *McDonnell Douglas* approach, a plaintiff can establish a case of racial discrimination by showing that: "(1) he is a member of a protected class; (2) at the time of his discharge, he was meeting his employer's legitimate expectations; (3) he was discharged; and (4) his employer treated similarly situated individuals

7

outside of the protected class more favorably." *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 545 (7th Cir. 2002); *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004). If Plaintiff successfully meets this burden, the burden of production then shifts to Defendants "to articulate a legitimate nondiscriminatory reason for [their] action." *Peters*, 307 F.3d at 545. Assuming Defendants meet this burden, the burden then shifts back to Plaintiff to show that the reason put forth by Defendants is a pretext for racial discrimination. *Id.*

In this case, Blunt cannot prove discrimination either directly or indirectly. He has presented no direct evidence of discrimination; neither can Blunt satisfy the test articulated in *McDonnell Douglas*. Although he meets the first and third elements, he cannot satisfy the second element because he twice violated ComEd's drug and alcohol policy. From his testimony, Blunt appears to take issue with the circumstances surrounding the first drug test in light of the fact that he had called in sick that day and was not on the job. However, ComEd's policy prohibits the use of illegal drugs even when the employee is off-the-job. Such drug use is grounds for disciplinary action, including termination. It makes no difference that Blunt had called in sick the day of his first positive drug test.

Furthermore, Blunt fails to show that Defendants' reasons for drug testing and termination were merely a pretext for discrimination. Blunt's failure to file a Local Rule 56.1(b)(3)(B) response results in his admission that there were legitimate reasons for sending Blunt for fitness-for-duty testing, and that Lehmkuhl, who recommended the testing, was unaware of his race. Finally, Blunt admits that the decision to terminate him was made by independent decision makers based on Blunt's two positive drug tests, in violation of the ComEd

policy. For these reasons, Blunt fails to make a case for racial discrimination, either directly or under *McDonnell Douglas*, and Defendants' motion for summary judgment must be granted.

**VI. CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is granted.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: July 28, 2009